UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICKOLAS WALKER

                Plaintiff,                        Case No. 06-11212

vs.                                      CHIEF JUDGE BERNARD A. FRIEDMAN
                                         MAGISTRATE JUDGE STEVEN D. PEPE

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**    **BACKGROUND**

        Nickolas Walker brought this action under 42 U.S.C. §405(g) to challenge a final decision of the Commissioner denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Both parties have filed motions for summary judgment which have been referred for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and (C). For the following reasons, IT IS RECOMMENDED that Plaintiff's motion for summary judgment be GRANTED IN PART and Defendant's motion for summary judgment be DENIED and this matter be remanded for further proceedings, so that the ALJ can incorporate the findings required by 20 C.F.R. §404.1520a into her opinion.

        **A.**    **Procedural History**

        Plaintiff filed an application for DIB on January 3, 2003, alleging disability beginning June 18, 2002, due to post traumatic stress disorder, panic disorder, major depression, hypertension and diabetes (R. 46-48, 62). On August 22, 2005, following a June 16, 2005, hearing before Administrative Law Judge Regina Sobrino (ALJ), Plaintiff's application was denied (R. 16-21). The

Appeals Council denied Plaintiff's request for review (R. 4-6).

Because the present motions involve only the sufficiency of the evidence to uphold ALJ Sobrino's determination of Plaintiff's mental residual functional capacity (RFC), only the evidence pertaining to Plaintiff's mental impairments and not his physical impairments is set out below.

### B.     **Background Facts**

#### 1.     ***Plaintiff's Hearing Testimony***

Plaintiff was born on May 17, 1953, and was 52 years old at the time of the hearing (R. 245). His last employment was with General Motors, a position he started in May 1978 (R. 255). When he stopped working in June 2002 he was experiencing heavy sweating, heart palpitations, mind racing and flushing in his face which eventually changed to flushing in his feet. He was easily frustrated and lost his "train of thought" and could not focus (R. 246). These symptoms started in 1995. He continued to work but the symptoms continued to get worse until he "couldn't take anymore".

When he started treatment he discovered that he was having panic attacks. He still experienced panic attacks when he went out, was stressed or felt that he could not leave a place or situation (R. 247). He required assistance with household chores from his daughters because doing the tasks "stressed" him and, as he described, "drives me up the wall", which led to headaches requiring him to lay down (R. 248). He experienced panic attacks once or twice a day unless he was able to stay in his house and remain inactive.

Plaintiff helped to take care of his mother who lived near him. He took her to the doctor and grocery shopping and visited her three to four times per week (R. 250). He was able to bathe and dress himself and do some yard work (R. 250-51). Plaintiff was able to drive himself to the grocery

store and drive his mother to the casino (75 miles) each month (R. 251).

Plaintiff's medications made him tired and he took two naps each day for one and one half hours each (R. 254). He had trouble sleeping at night and, since 1995, woke every hour and a half to two hours.

### 2.   *Medical Evidence*

ALJ Sobrino's summary of the medical records is thorough and basically undisputed (R. 17-19). At issue are the state agency physician's opinions on Plaintiff's mental RFC. As such, these are the only records set out in detail below.

On March 12, 2003, Gordon R. Forror, M.D., examined Plaintiff on behalf of the state agency  (R. 120). Plaintiff reported that he was experiencing the following symptoms: "I get irritated and I climb the wall at anything that I have to do longer than fifteen minutes." Dr. Forror remarked that the examination lasted 35 minutes and he observed no such reaction. Plaintiff also reported experiencing panic and sweats, heart skipping, flushing, hot flashes and post traumatic stress disorder. He explained that he was afraid a car would fall on him because one almost had. His appetite was good, he had trouble sleeping and woke every hour or two (R. 121). He was being treated by Dr. Mankar every six weeks for the last five months and a therapist on a weekly basis since 2002 (R. 122). Plaintiff reported that he was not depressed. He took care of daily household chores without limitation and watched some television but did not read. He shopped for food and necessities, did laundry and cooking, and took care of his own personal needs. His mood was unremarkable, with no irritability or anxiety and no depression. Dr. Forrer diagnosed panic disorder without agoraphobia, depressive disorder, personality disorder and indicated that his current level of psychological functioning was adequate (R. 124).

3

Psychiatrist Laurence Domino, M.D., reviewed Plaintiff's medical records on behalf of the state agency and checked the boxes on the Mental Residual Functional Capacity Assessment indicating that Plaintiff was moderately limited in the following areas:

A. <u>Understanding and Memory</u>

* * * *
(3.) The ability to understand and remember detailed instructions;

B.   <u>Sustained Concentration and Persistence</u>

* * * *
(5.) The ability to carry out detailed instructions;
(6.) The ability to maintain attention and concentration for extended periods;
* * * *
(11.) The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

C.   <u>Social Interaction</u>
(12.) The ability to interact appropriately with the general public;
* * * *
(14.) The ability to accept instructions and respond appropriately to criticism from supervisors;
* * * *

D.   <u>Adaptation</u>
(17.) The ability to respond appropriately to changes in the work setting; and
* * * *
(20.) The ability to set realistic goals or make plans independently of others.

(R. 125-126).

Dr. Domino elaborated on these findings in the "Functional Capacity Assessment" section and provided an explanation for each section:

A.) Plaintiff was able to understand and recall simple instructions.
B.) Plaintiff was able to carry out simple tasks and concentrate on simple tasks for two hours at a time given usual breaks. Plaintiff was able to perform at a consistent pace given simple tasks.
C.) Plaintiff could have casual contact with the general public and was able to accept constructive criticism.

4

D.) Plaintiff was able to respond to changes if introduced gradually, was able to use public transportation and was able to set short term goals and complete unskilled tasks.

(R. 127).

### 3.   *Vocational Evidence*

Pauline McEachin served as the vocational expert (VE) in this matter (R. 341).

VE McEachin classified Plaintiff's past work as a automotive assembly line worker as unskilled and at a light exertional level (R. 260).

ALJ Sobrino asked VE McEachin to consider a hypothetical person of Plaintiff's work experience who was born in 1953 and had finished 12th grade, did take some college course but had no college degree and was limited as follows: lifting, carrying, pushing and pulling 25 pounds frequently and 50 pounds occasionally; not able to climb ladders ropes, or scaffolds; cannot be exposed to hazards; must have a clean air environment; limited to simple, routine, low-stress work; can tolerate superficial contact with co-workers and supervisors but should not be required to deal with the general public (R. 260).  VE McEachin testified that this hypothetical person could perform Plaintiff's past work, provided there were no production quotas (R. 260-61).  VE McEachin further testified to other jobs the hypothetical person could perform:

> (a.) medium exertional, unskilled – dishwasher (8,000), janitor (5,000), kitchen helper (14,000) and housekeeper (5,000); and
> (b.) light exertional, unskilled – janitor (2,500), food service worker (8,000), security guard (3,000).

(R. 261).

Plaintiff's counsel asked VE McEachin to consider whether the following limitation would preclude work: 30 percent of a 40 hour work week a person is unable to complete the

5

workday or work week because of psychological based symptoms, or 30 percent of the time they are unable to perform at a consistent pace without an unreasonable number and length of rest periods (R. 267).  VE McEachin explained that this would preclude work.  Plaintiff's counsel further asked whether  an individual that was unable to sustain sufficient concentration, persistence and pace to complete tasks in a timely manner 30 percent of the time in a 40 hour work week could retain a position, and VE McEachin replied that they could not.

   4.   *The ALJ's Decision*

ALJ Sobrino found that Plaintiff met the non-disability insured requirements of the Act through June 2008 and he had not engaged in substantial gainful activity since the alleged date of disability onset (R. 20).

Plaintiff had severe depressive disorder an anxiety related disorder, a personality disorder and obesity, but the severity of the Plaintiff's conditions did not meet or equal the requirements of any impairment listed in Appendix 1, Subpart P, of Regulations No. 4 (20 C.F.R. § 404.1520(d)) (the "Listing").

ALJ Sobrino found that the medical evidence documented the existence of impairments that could reasonably be expected to produce anxiety, depression and decreased tolerance for stress, but disabling symptoms were not fully substantiated by objective medical or other evidence.

Plaintiff had the RFC to lift, carry, push and pull 25 pounds frequently and 50 pounds occasionally; he could not be exposed to hazards; he was limited to simple, routine, low stress work that did not involve production quotas; he could tolerate superficial contact with co-workers and supervisors, but he was not to be required to deal with the general public (R. 20-21).

6

Plaintiff was unable to perform his past work and had no transferrable skills (R. 21). Although Plaintiff's limitations precluded him from performing a full range of medium work, using the Medical-vocational tables as a guideline and relying on VE McEachin's testimony regarding available jobs, VE Sobrino determined that Plaintiff was not disabled.

## II.   ANALYSIS

### A.   <u>Standard Of Review</u>

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[1]  A response to a flawed hypothetical

---

[1] *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987)

question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

### B.   <u>Factual Analysis</u>

In his motion Plaintiff argues that ALJ Sobrino erred in formulating Plaintiff's RFC as it pertains to his mental limitations, in that the RFC does not adequately address all the areas in which Plaintiff was found by Dr. Domino to have moderate limitations.

ALJ Sobrino determined that Plaintiff had the RFC for work that was simple, routine, low stress; does not involve production quotas; involved only superficial contact with co-workers and supervisors; and required no contact with the general public (R. 19, 20-21).

Plaintiff argues that this RFC does not adequately portray Plaintiff because it does not incorporate Dr. Domino's findings of moderate limitations in:

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- The ability to interact appropriately with the general public;
- The ability to accept instructions and respond appropriately to criticism from supervisors;
- The ability to respond appropriately to changes in the work setting; and
- The ability to set realistic goals or make plans independently of others.

In support of this argument Plaintiff relies on *Bankston v. Comm'r of Soc. §*, 127 F. Supp. 2d 820 (E.D. Mich. 2000).  In *Bankston* the Court noted that it was reasonable to conclude under

---

(Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

8

the regulations "that a mental deficiency occurring 'often' may not be consistent with substantial

gainful employment." *Id.* at 826.  The Court then determined that under the relevant portion of

the Psychiatric Review Technique Form (PRTF), "often" should logically be defined as fifty

percent of the time.  *Id.* at 827.  In *Bankston*, the finding that the claimant often had deficiencies

of concentration, paired with the uncontested findings of the treating physician that he was

disabled, resulted in a finding of disability and a remand for award of benefits.  Yet, in *Bankston*,

unlike the present case, the ALJ adopted the "often" finding in his PRTF.  In the present case the

finding would have been different than in *Bankston* because the regulation and its corresponding

form have now been changed so that limitations in concentration are no longer measured in

terms of frequency, but rather on a five-point scale: none, mild, moderate, marked, and extreme.

*See* 20 C.F.R. § 404.1520a(c)(4) (Sept. 20, 2000); Revised Medical Criteria for Evaluating

Mental Disorders and Traumatic Brain Injury; Final Rules, 65 Fed. Reg. 50,745, 50, 775 (Aug.

21, 2000); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain

Injury; Correction, 65 Fed. Reg. 60584 (Oct. 12, 2000).[2]

---

[2]  The Sixth Circuit has since held that an ALJ's failure to include in a hypothetical
question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for
remand when the hypothetical question at step five of the sequential evaluation adequately
describes that claimant's limitations arising from a mental impairment.  *Smith v. Halter*, 307 F.3d
377, 379 (6th Cir. 2001).   In *Smith*, the ALJ marked on the PRTF that Smith "often" suffered deficiencies of con
persistence or pace, but did not include that finding in the hypothetical question to the VE.  Smith, relying on cas
*Bankston*, argued for a remand based on that omission.  The Sixth Circuit, without citing *Bankston,* held that the
question asked by the ALJ was adequate.  The court noted that while the ALJ checked a single box in a 1-5 rating
psychiatric assessment form

> the ALJ went beyond this simple frequency assessment to develop a complete and accurate assessment o
> mental impairment, as *Varley* requires.  In particular, the ALJ relied on the testimony of four physicians
> characterized Smith's concentration problems as minimal or negligible.  The ALJ then translated Smith's
> condition into the only concrete restrictions available to him–examining psychiatrist Schweid's recomme
> restrictions against quotas, complexity, stress, etc.–and duly incorporated them into his hypothetical to th
> vocational expert.

In the present case ALJ Sobrino did not complete a PRTF, which is no longer required of ALJs.  20 C.F.R. §404.1520a now requires that the ALJ follow a special technique when assessing the severity of mental impairments.  Specifically, the ALJ must evaluate the degree of functional loss  –  using the new  five-point scale: none, mild, moderate, marked, and extreme – in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §404.1520a(c)(3).  In addition, the ALJ must document application of this technique in the written decision.  *Id.* at 404.1520a(e)(2) ("[T]he written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.").

A review of ALJ Sobrino's decision reveals that she failed to properly evaluate Plaintiff's mental impairment at step three in accordance with the Commissioner's regulations. ALJ Sobrino's decision contains no finding as to the degree of limitation in any of the functional areas described in the regulation.

---

*Id.* at 379. The Court distinguished several unpublished district court cases similar to *Bankston* because the ALJ did not include the finding that the claimant "often" had difficulty concentrating, nor did they otherwise account *Id.*  Thus, when the ALJ makes a PRTF finding that the claimant "often" has problems with concentration or has problems under the new regulations, but does not specifically include that limitation in the hypothetical question twofold: 1) whether the ALJ made adequate alternate concrete job restrictions that suitably accommodate the wo limitations; and 2) if any expert or other examiner opines that the claimant's concentration difficulties would pre whether there is an adequate factual and logical basis for the ALJ to have rejected such contrary opinions.

It may be that the only error by the ALJ is in the failure to document her evaluation of the degree of functional loss.  Indeed, it may be that ALJ Sobrino adopted Dr. Domino's findings.  Yet, on the present the record it is unclear what if any weight ALJ Sobrino gave to Dr. Domino's opinion and what specific findings ALJ Sobrino made with regard to Plaintiff's limitations in the functional areas.[3]  Not only is this evaluation sequence and its specific findings necessary for a proper evaluation of whether a claimant meets the Listing of Impairments for a mental limitation at step three of the Commissioner's sequential evaluation, but those findings are also relevant to what must be included in a hypothetical question to the vocational expert at step five of the sequential evaluation.[4]

This Court cannot evaluate whether substantial evidence exists to support the Commissioner's decision where there is a risk that incorrect legal standards were used as a basis for that decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998) (quoting *Johnson v.*

---

[3]  The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton,* 359 U.S. 535, 545 (1959); *Service v. Dulles,* 354 U.S. 363, 372,(1957); *Accardi v. Shaughnessy,* 347 U.S. 260, 267, (1954). An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." *Vitarelli,* 359 U.S. at 547, (Frankfurter, J., concurring).  *Wilson v. Commissioner of Social Security,* 378 F.3d 541 (6th Cir. 2004), urges remand in most cases even where there is sufficient evidence in the record to uphold the ALJ decision and even when a different outcome on remand is unlikely:  "'[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.' *Mazaleski v. Treusdell,* 562 F.2d 701, 719 n. 41 [(D.C. Cir 1977)].'  To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with [the regulation], would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory." *Wilson,* at 546.

[4] See footnote 2, *supra.*

11

2:06-cv-11212-BAF-SDP   Doc # 15   Filed 03/30/07   Pg 12 of 13   Pg ID 339

*Bowen*, 817 F.2d 983, 986 (2d Cir.1987)) ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.' "). For this reason a remand is required.

## III.   RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment be GRANTED IN PART and this matter be remanded for further proceedings, so that the ALJ can make and incorporate the findings required by 20 C.F.R. §404.1520a into her opinion and make any related modifications in the vocational questions and findings necessary.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objection must be served upon this Magistrate Judge.


Dated: March 30, 2007                          s/Steven D. Pepe
Ann Arbor, Michigan                            United States Magistrate Judge


<u>Certificate of Service</u>

        I hereby certify on <u>March 30, 2007</u>, I electronically filed the foregoing paper with the
Clerk of the Court using the ECF system which will send notification of such filing to the
following: <u>James A. Brunson, Esq. and Mikel E. Lupisella, Esq.</u>

                                               s/Tammy Hallwood
                                               Deputy Clerk
                                               U.S. District Court
                                               600 Church St.
                                               Flint, MI 48502
                                               810-341-7850